| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | | **NOT FOR PUBLICATION** |
|---|---|---|
| ------------------------------------------------------------ X | | |
| JOHN ANTHONY SGALIORDICH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **MEMORANDUM & ORDER** |
| - against - | : | |
| | : | |
| LLOYD'S ASSET MANAGEMENT, | : | No. 1:10-cv-03669(ERK) |
| CARLTON ASSET MANAGEMENT, | : | |
| LIBERTY BULLION INTERNATIONAL, LLC, | : | |
| GIOVANNI LOAIZA | : | |
| | : | |
| Defendants. | : | |
| ------------------------------------------------------------ X | | |

**KORMAN, J.:**

John Sgaliordich is an individual investor who alleges that various investment professionals made fraudulent misstatements to him about the value and expected performance of investments in silver and gold and executed various trades and transfers without his authorization. The defendants now include three financial companies and one of the individual investment professionals who is alleged to have made fraudulent misstatements and executed unauthorized trades and transfers. Plaintiff alleges six causes of action: violation of New York General Business Law § 349 (proscribing deceptive acts and practices); violation of Florida Deceptive and Unfair Trade Practices Act § 501.204; breach of fiduciary duty; common law fraud; conversion; and, unjust enrichment. Defendant Lloyds Asset Management moves to dismiss pursuant to Rule 12(b)(6) or, in the alternative, for a more definite statement.

The complaint alleges that Lloyds is liable for the acts of the investment professionals who are alleged to have made fraudulent misstatements and executed unauthorized trades and transfers because Lloyds employed these individuals at the relevant times. The complaint might also be liberally construed to allege that Lloyds is liable as the successor of another company,

1

Carlton Asset Management, that also employed some these individuals at the relevant times. But because the complaint fails to state a facially-plausible claim of either *respondeat superior* or successor liability against Lloyds, the motion to dismiss is granted.

**FACTS**

In March 2007, plaintiff, John Sgaliordich, a resident of Brooklyn, New York, invested in silver because Brandon Brassert, an employee of Carlton Asset Management, told him silver was a safe investment with low volatility. Compl. ¶¶ 14, 15, 17. Brassert also told plaintiff that Barclay's Bank would soon make a large purchase of silver that would drive up the price.[1] Compl. ¶ 16. Consequently, "Plaintiff invested $10,000 in silver in March 2007," Compl. ¶ 17, presumably in an account held by Carlton Asset Management and managed by Brassert. In April 2007, Brassert was fired by Carlton. Compl. ¶ 18–19. Although the complaint characterizes "these and other" statements made by Brassert as "fraudulent," Compl. ¶ 17, it does not identify which statements were false or misleading, how they were false or misleading, or whether plaintiff was harmed as a result of his reliance upon any statements in particular.

Like Brassert, Michael Comiskey also worked for Carlton Asset Management. Compl. ¶ 19. Comiskey told plaintiff that he was "much more experienced" in silver investing than Brassert, Compl. ¶ 21, that silver "was a safe investment, *id.* at ¶ 22, that plaintiff would "'never have an equity call,'" *id.*, that "silver was safer than the stock market," *id.* at ¶ 23, and that "Plaintiff's leverage would 'never exceed two and a half times invested capital,'" *id.* Plaintiff relied on these representations and "continued to heavily invest in silver." Compl. ¶ 24. Specifically, in late March and April 2007, plaintiff invested $250,000 in silver with Carlton

---

[1] Plaintiff does not address whether this information was nonpublic at the time.

2

Asset Management. Compl. ¶ 28. At some unspecified time "later," plaintiff invested $300,000 in some unspecified investment with Lloyds Asset Management. *Id.*

Comiskey made the above-mentioned statements "in the course and scope of his duties while employed at Lloyd's Asset Management <u>and/or</u> Worth Bullion Group . . . ."[2] Compl. ¶ 24. (emphasis added). Although the complaint characterizes these statements as "fraudulent misrepresentations," *id.*, it does not identify which statements were false or misleading, how they were false or misleading, where Comiskey was employed when he made each false or misleading statement, or whether plaintiff was harmed as a result of his reliance upon any statements in particular.

In connection with his investments with Carlton and Lloyds, "Plaintiff paid commissions on invested and leverage funds – commissions which Plaintiff was never informed of prior to investing this capital with Defendants." Compl. ¶ 29. The complaint does not allege the amount of these commissions or the dates on which they were paid. Between late March and the end of December 2007, "Plaintiff paid $123,500 in commissions and administrative fees." Compl. ¶ 33. The complaint fails to identify the entity that charged these commissions and fees, how they were billed, how they were paid, what if anything was the stated reason for them (*e.g.*, whether they related to specific investments), whether *these* commissions and fees include those he allegedly paid in connection with his investments with Carlton and Lloyds, *cf.* Compl. ¶ 29, or whether any of these commissions and fees were inadequately disclosed to him. Global Asset

---

[2] The complaint alleges *both* that "Comiskey currently works for either Lloyd's Asset Management <u>and/or</u> Worth Bullion Group," *id.* ¶ 25 (emphasis added) *and* that Comiskey no longer works for Lloyds, *id.* at ¶ 36, which implies that Comiskey currently works for Worth Bullion Group. Worth Bullion Group was voluntarily dismissed as a defendant.

Management, a clearing firm, also charged plaintiff $31,500 in interest. Compl. ¶¶ 31–32. The complaint says nothing further about this charge.[3]

Apparently sometime in 2008, "Plaintiff's account [presumably with Carlton Asset Management] was . . . closed and transferred to Lloyds Asset Management without plaintiff's knowledge or consent . . . ." Compl. ¶ 34. Plaintiff "received" $95,000 at this time, which reflects a $155,000 loss on his "original investment."[4] *Id.* "Comiskey remained plaintiff's personal broker when plaintiff's account was transferred to Lloyds Asset Management, a brokerage firm in Jupiter, Florida." Compl. ¶ 35. Sometime in 2008, Comiskey left Lloyds, and another broker, Giovanni Loaiza "became Plaintiff's personal broker." Compl. ¶ 36.

Loaiza told plaintiff that "he would double his investment before the end of 2008 and that Plaintiff should diversify his investments by purchasing gold." Compl. ¶ 38. Plaintiff agreed to purchase "up to" 350 ounces of gold. Compl. ¶ 39. But Loaiza "purchased in excess of this authorized amount and continued to leverage Plaintiff's investment without authorization." Compl. ¶ 40.

On June 27, 2008, "Plaintiff was attacked, assaulted and rendered helpless and in a coma . . . ." Compl. ¶ 41. Most of what follows in the complaint is alleged upon information and belief. Loaiza made certain unidentified unauthorized trades while plaintiff was in a coma. Compl. ¶ 42. Plaintiff fails to allege what account was affected by the allegedly unauthorized trading and whether Lloyds had any responsibility for that account. On July 30, 2008,

---

[3] Global Asset Management was voluntarily dismissed as a defendant.

[4] The inference is apparently that plaintiff initially invested $250,000 in silver with Carlton; he "received" only $95,000 when his account at Carlton was closed; thus he lost $155,000. In fact, $155,000 is the total of the interest charges, commissions, and fees that plaintiff was allegedly charged ($123,500 + $31,500 = $155,000). So it appears from plaintiff's own allegations that he suffered no investment loss as a result of any fraudulent misrepresentation. And, as mentioned above, plaintiff does not allege any fraudulent misrepresentation with respect to *these* commissions and fees.

4

"Plaintiff's account with Lloyds Asset Management was abruptly closed without Plaintiff's permission and Plaintiff was issued a check in the amount of $77,587.16."[5] Compl. ¶ 43.

Even after Loaiza's unauthorized trading and the abrupt and unauthorized closure of his account with Lloyds, plaintiff subsequently invested $67,000 with Loaiza because Loaiza "told Plaintiff that he would recover his monies lost while a client at Lloyds Asset Management." Compl. ¶ 44. Whatever account was opened for that investment was apparently also closed by Loaiza sometime later. Compl. ¶ 46. The complaint does not clearly set forth the events that followed. Apparently Loaiza opened yet another account for plaintiff, under "a new investment firm with the name Liberty B[u]llion International." *Id.* Loaiza and another man, Victor Morgan (whose role and business affiliation are left unspecified in the complaint) "became inaccessible" after some investment was made with funds in plaintiff's account. Compl. ¶¶ 45, 48. But it appears that plaintiff was able to contact them after all, because they "refused" to return plaintiffs funds after repeated demands. Compl. ¶ 49. At some unspecified time, plaintiff withdrew approximately $19,000 of his original investment of $67,000 from his account with Liberty Bullion. Compl. ¶ 50. Plaintiff does not allege whether he could have withdrawn the entire account balance at that time. Loaiza still controls the remaining $48,000 from plaintiff's original investment. Compl. ¶ 52.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[5] Given that plaintiff's account had $95,000 in it when it was transferred to Lloyds sometime in 2008, it had approximately $17,400 less in value when it was closed on July 30, 2008 ($95,000 – $77,587.16 = 17,412.84). Plaintiff does not indicate whether the loss in value was due to Loaiza's unauthorized trading, some form of fraud, additional commissions, fees, or interest, or a decline in the silver or gold markets.

5

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). While it is doubtful that plaintiff has alleged with the requisite particularity any cause of action grounded in fraud (namely, counts two through six),[6] all of plaintiff's claims against Lloyds are dismissed regardless because he has failed to plead any plausible theory of Lloyds' liability.

## DISCUSSION

**A.    Plaintiff's Complaint Fails to Plausibly Allege that Lloyds is Liable under *Respondeat Superior*.**

Plaintiff fails to state a facially-plausible claim that Lloyds is vicariously liable for the alleged tortious acts of the individual defendants. "It is black letter law that respondeat superior only holds an employer to answer for the acts of an employee performed *within the scope of the employment*." *Coleman & Co. Securities, Inc. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 303 (S.D.N.Y. 2002); *see also Riviello v. Waldron*, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302 (1979) (same). The following factors are relevant in determining whether an employee's alleged acts fall within the scope of his employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

---

[6] Defendant Lloyds Asset Management implies in its briefing that the heightened pleading standard applicable to fraud claims, under FED. R. CIV. P. 9(b), applies to every claim alleged in Plaintiff's Complaint. Lloyds is correct with respect to Count Four (Common Law Fraud), *see Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 110 (E.D.N.Y. 2009) ("Rule 9(b) applies to all common law fraud claims, including claims under state law."); Lloyds is also correct with respect to Count Three (Breach of Fiduciary Duty), Count Five (Conversion), and Count Six (Unjust Enrichment), *see Silverman Partners., L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) ("breach of fiduciary duty, conversion, and unjust enrichment must be pled with specificity when the underlying acts are allegedly fraudulent."). It also appears that Count Two (Violation of Florida Deceptive and Unfair Trade Practices Act § 501.204) must be pleaded with particularity, under Rule 9(b), because Count Two is grounded in fraud. *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002). But Count One (Violation of N.Y. General Business Law § 349) "is not subject to the pleading-with-particularity requirements of Rule 9(b) . . . ." *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

*Riviello*, 47 N.Y.2d at 303, 418 N.Y.S.2d at 303. "[A]n employee's actions are not within the scope of employment unless the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business." *Davis v. City of New York*, 226 A.D.2d 271, 272, 641 N.Y.S.2d 275, 276 (1st Dep't 1996) (*quoting Stavitz v. City of New York*, 98 A.D.2d 529, 531, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)). Accordingly, the complaint must plead sufficient facts to permit the Court to draw a reasonable inference that the individuals were both (1) employed by Lloyds and (2) acting consistently with their normal job duties with the purpose of furthering Lloyds' interests, when they allegedly made fraudulent misstatements and executed unauthorized trades and transfers. Plaintiff has not pleaded sufficient facts concerning the employment relationship between Lloyds and these individuals to support a reasonable inference that these elements are satisfied.

### *David Love:*

The one individual defendant unequivocally alleged to have had an agent/principal relationship with Lloyds is David Love, who is mentioned just once in the "Parties" section of the complaint; plaintiff alleges that Love "*conducts business* in Florida for Lloyd Asset Management and . . . has done business [for someone] in New York." *See* Compl. ¶ 7 (emphasis added). Love is not alleged to have had any role in the transactions at issue in the complaint, and he has been voluntarily dismissed as a defendant.

### *Brandon Brassert:*

Plaintiff alleges that Brassert was employed by Lloyds Asset Management sometime after his employment with Carlton. Compl. ¶ 15. But Brassert was apparently employed by Carlton the entire time he was dealing with plaintiff. *See id.* at ¶¶ 15–18. Plaintiff does not

7

allege when Brassert was hired by Lloyds or what dealings (if any) Brassert had with plaintiff while he was employed by Lloyds.

*Michael Comiskey:*

Plaintiff alleges that Michael Comiskey "continued the efforts on behalf of Carlton Asset Management and later Lloyds Asset Management to induce Plaintiff to invest in silver." Compl. ¶ 19. But the complaint does not unequivocally allege that Comiskey is or was ever employed by Lloyds. Instead, plaintiff pleads in the alternative that Comiskey made fraudulent misrepresentations "while employed at Lloyd's Asset Management and/or Worth Bullion Group . . . ." Compl. ¶ 24 (emphasis added); *see also id.* at ¶ 25 ("Upon information and belief, Comiskey currently works for either Lloyd's Asset Management and/or Worth Bullion Group."). Plaintiff does not plead any additional facts to support the allegation that Lloyds employed Comiskey; nor does plaintiff offer any explanation of why it would be unclear to him whether it was Lloyds or Worth Bullion who employed Comiskey at the time that Comiskey acted as plaintiff's "personal broker." *Id.* at ¶ 21.

Plaintiff further alleges that he invested "$300,000 with Lloyds Asset Management," presumably under Comiskey's management. Compl. ¶ 28. But the complaint fails to allege any additional facts concerning this investment, in particular, the subject or date of the investment. Presumably it was made sometime in 2008 because plaintiff's account was only "transferred to Lloyds" sometime after "the end of 2007." Compl. ¶¶ 32, 34.

*Giovanni Loaiza:*

Presumably sometime in 2008, "Giovanni Loaiza became Plaintiff's personal broker after Comiskey left Lloyd's Asset Management's employ." Compl. ¶ 36. The complaint does not allege that Loaiza worked for Lloyds; indeed, in describing the parties to the lawsuit, it merely

8

alleges: "Upon information and belief, Defendant Giovanni Loaiza is an officer, director and agent of Defendant Liberty Bullion International." Compl. ¶ 12.

*Lloyds Asset Management:*

Aside from the allegation that Comiskey was employed by "either Lloyds Asset Management and/or Worth Bullion Group," Compl. ¶ 24, the most specific allegation about Lloyds' connection to the allegedly fraudulent misrepresentations and unauthorized trades and transfers is: "Upon information and belief, Lloyd's Asset Management is the reference on Plaintiff's JP Morgan & Chase bank statements . . . ," *id.* at ¶ 26. Plaintiff does not explain what it means to be "the reference" on a bank statement, much less how this allegation tends to show that Lloyds is vicariously liable for the allegedly tortious acts of any of the individuals mentioned in the complaint.

Even accepting "all well-pleaded allegations in the complaint as true, [and] drawing all reasonable inferences in the plaintiff's favor," *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010), the complaint does not allege sufficient facts "to state a claim to relief that is plausible on its face" because it has failed to plead "factual content that allows the court to draw the reasonable inference that [Lloyds] is liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949. In sum: the complaint fails to allege that Love did anything wrong; the complaint fails to allege that Brassert had any dealings with plaintiff while he was allegedly employed by Lloyds; the complaint fails to allege that Comiskey acted tortiously at any time after plaintiff's account was transferred to Lloyds and only alleges that he was employed by "Lloyds Asset Management and/or Worth Bullion Group";[7] and

---

[7] Plaintiff's theory might be that Comiskey made fraudulent misrepresentations as an employee of Lloyds to induce plaintiff to invest with a *different* brokerage firm, perhaps Carlton. But it would be implausible to suggest that Comiskey was acting within the scope of his employment *at Lloyds* by steering business to a different brokerage firm.

9

the complaint never alleges (even in the alternative) that Loaiza was employed by Lloyds. Plaintiff's contention that "the Complaint identifies the speakers who were at that time employed by Lloyds, who made repeated fraudulent statements to Plaintiff," Pl.'s Br. at 5, simply mischaracterizes the allegations set forth in the complaint concerning the pertinent employment relationships, the alleged fraudulence of the statements, and the timing of the statements.

Plaintiff's contention that he "affirmatively pled that Lloyd's employees traded in his account without his approval or even knowledge in June 2008," *see id.*, would be correct only if plaintiff had adequately pleaded that Loaiza—who was allegedly managing plaintiff's investment at this time—was employed by Lloyds, which he failed to do. Moreover, Loaiza was alleged to have "abruptly closed" plaintiff's account at Lloyds "without Plaintiff's permission," Compl. ¶ 43, which does not further *Lloyds'* interests in any apparent way.

Indeed, there is no more reason to believe that any of the individuals mentioned in the complaint were acting *within* the scope of their employment rather than *outside* it because the complaint does not allege sufficient facts concerning the individuals' respective positions, job titles, responsibilities, or employment histories to infer that any of the factors identified in *Riviello*, *see supra* at 6–7, are satisfied here.[8] Plaintiff's opposition brief simply attributes the alleged actions of other persons to Lloyds without alleging facts sufficient to support a reasonable inference that Lloyds is liable under *respondeat superior* for any harm caused by those actions.

The complaint does not provide any more factual content concerning Lloyds business than it does concerning the scope of the alleged employment of the individuals. Indeed, the

---

[8] The sum total of the allegations in this regard is that Brassert, Comiskey, and Loaiza each served as plaintiff's "personal broker," *see* Complaint ¶¶ 21, 36, and the conclusory allegation that Comiskey made some statement that constituted a fraudulent misrepresentation "in the course and scope of his duties while employed at Lloyd's Asset Management and/or Worth Bullion Group," *id.* at ¶ 24.

complaint merely alleges that Lloyds is "a corporation," *id.* at ¶ 5; that Brassert "continued the efforts on behalf of . . . Lloyds Asset Management to induce Plaintiff to invest in silver," *id.* at ¶ 19; that Lloyds is "the reference on Plaintiff's JP Morgan & Chase bank statements," *id.* at ¶ 26; that plaintiff invested "$300,000 [in some unspecified investment] with Lloyds Asset Management," *id.* at ¶ 28; that plaintiff's account was "transferred to Lloyds," apparently sometime in 2008, *id.* at ¶ 34; and that while in Lloyds "employ," Comiskey served as plaintiff's "personal broker," *id.* at ¶ 36. The complaint does not allege sufficient factual content concerning Lloyds' business, operations, or personnel to permit any reasonable inferences about what Lloyds does, how Lloyds does it, whether it has any actual employees, and, if it does, what they do. Consequently, it is not possible to draw a reasonable inference that any of the individuals mentioned in the complaint acted within the scope of their alleged employment by Lloyds to harm plaintiff. *See Riviello*, 47 N.Y.2d at 303, 418 N.Y.S.2d at 303.

**B.** **Plaintiff's Complaint Fails to State a Facially-Plausible Claim that Lloyds is Liable as the Successor of Carlton Asset Management.**

Plaintiff suggests in his opposition brief that Lloyds is liable as the successor of Carlton, *see* Pl.'s Br. at 2 (Carlton "later became Lloyds"), though this allegation appears nowhere in the complaint.[9] Plaintiff alleges that Carlton employed Brassert at the time when Brassert made some unidentified fraudulent misrepresentation to plaintiff concerning a silver investment. *See* Compl. ¶¶ 15–17. So Plaintiff might be claiming that Lloyds succeeded to Carlton's liability for the alleged tortious conduct of Carlton's alleged agent, Brassert.

---

[9] The only hint of this theory is that Brassert is alleged to have been "an employee of Carlton Asset Management (and later Lloyds Asset Management) . . . ." Complaint ¶ 15.

Even if Carlton somehow "became" Lloyds, "[i]t is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor." *Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 244–245, 464 N.Y.S.2d 437, 440 (1983). But

> [a] corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

*Id.*, 59 N.Y.2d at 245, 464 N.Y.S.2d at 440. Here, the complaint has alleged nothing about the relationship between Carlton and Lloyds or how Carlton "became" Lloyds. The complaint, therefore, fails to state a claim for successor liability that is plausible on its face because it has not alleged factual content sufficient to support a reasonable inference that any of the grounds of successor liability applies to Carlton and Lloyds.

## CONCLUSION

Because the complaint fails to allege sufficient facts to state a facially-plausible claim against Lloyds Asset Management for either (A) vicarious liability arising from the alleged tortious conduct of the specified individuals or (B) successor liability arising from the alleged tortious conduct of any of Carlton Asset Management's alleged agents, defendant Lloyds Asset Management's motion to dismiss for failure to state a claim is GRANTED with leave to replead within sixty (60) days of the date of this order.

**SO ORDERED.**

Brooklyn, New York
February 8, 2011

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge