UNITED STATES DISTRICT COURT        __NOT FOR PUBLICATION__
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
JOHN ANTHONY SGALIORDICH,      :
       :
       Plaintiff,      :
       :        __MEMORANDUM & ORDER__
      - against -      :
       :
LLOYD'S ASSET MANAGEMENT,      :       No. 1:10-cv-03669(ERK)
CARLTON ASSET MANAGEMENT,      :
LIBERTY BULLION INTERNATIONAL, LLC, :
and GIOVANNI LOAIZA      :
       :
       Defendants.      :
-------------------------------------------------------- X

KORMAN, J.:

On August 11, 2010, John Sgaliordich, an individual investor, filed a complaint alleging

that various investment professionals made fraudulent misstatements to him or omitted material

information about the value and expected performance of investments in silver and gold, and

executed various unauthorized trades and transfers on his behalf.  On February 8, 2011, I granted

Lloyd's Asset Management's motion to dismiss because the complaint failed to allege a facially-

plausible claim for either vicarious or successor liability against Lloyd's Asset Management, but

I gave the plaintiff leave to replead within sixty days.

I dismissed the first amended complaint on March 26, 2012, for failure to allege the

citizenship of defendants Jon Paul Vasta and Giovanni Loaiza.  Plaintiff then filed a second

amended complaint on March 26, 2012.  The defendants remaining in the case are (1) three

financial companies -- Lloyd's Asset Management ("Lloyd's"), Carlton Asset Management

("Carlton Mgmt."), and Liberty Bullion International, LLC ("Liberty Bullion"), (2) Jon Paul

Vasta, who is alleged to be a former officer and director of Carlton Mgmt. and a current officer

and director of Lloyd's, and (3) Giovanni Loaiza, an investment professional who is allegedly

employed by Lloyd's.  Plaintiff alleges six causes of action: (1) violation of New York General Business Law § 349; (2) violation of Florida's Securities and Investor Protection Act § 517.301; (3) breach of fiduciary duty; (4) fraudulent inducement; (5) conversion; and, (6) unjust enrichment.  Defendants Lloyd's, Liberty Bullion, and Loaiza move to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## FACTS

Brandon Brassert, an employee of Carlton Mgmt., and Jon Paul Vasta, the former principal of Carlton Mgmt., solicited plaintiff John Sgaliordich to invest with Carlton Mgmt. to trade precious metals, including silver.  Second Am. Compl. ¶ 18.  They represented that (1) Carlton Mgmt. was an experienced company with a strong management team, experienced traders -- such as Vasta and Brassert, and a successful track record of managing customer accounts, (2) silver was a safe investment with low volatility, (3) the investment recommendations would be made in accordance with the National Futures Association's ("NFA") Rules and Regulations and would be suitable for plaintiff considering his objectives, income and financial status, and (4) no transactions would be executed without plaintiff's prior authorization.  *Id.*

Brassert also told plaintiff that Barclay's Bank would soon make a large purchase of silver that would drive up the price.  *Id.* ¶ 22.  Carlton Mgmt. and Vasta characterized the venture as a high profit, short term, safe investment with little or no risk.  *Id.* ¶ 23.  Relying on their representations, in March 2007, plaintiff funded a newly opened account with Carlton Mgmt. and Vasta for investment in physical precious metals, specifically silver.  *Id.* ¶ 24.  Plaintiff alleges, prior to his investment with them, Carlton Mgmt. and Vasta failed to disclose that (1) Vasta pled guilty to criminal charges in 2002, (2) Vasta was not licensed to purchase and/or sell

commodities or commodities futures, and (3) Carlton Mgmt. was not properly registered with either the NFA or Florida to sell commodities. *Id.* ¶ 25.

Moreover, plaintiff alleges that Carlton Mgmt. and Vasta "made misrepresentations and omissions regarding business operations, the likelihood that a customer would realize large profits from purchasing commodities, the risks involved in trading commodities, the true nature of Plaintiff's investments with Carlton [Mgmt.] and Vasta, and the fees charged." *Id.* ¶ 26. Specifically, the defendants represented that commodities investments carried "little, to no risk, that certain trades were guaranteed to generate a profit," and that trades would be transacted only with plaintiff's prior authorization. *Id.* Without any further specification, plaintiff alleges that during telephone calls, Vasta and Brassert expanded on these misrepresentations in soliciting him to invest in precious metals. *Id.* ¶ 27. These "and other fraudulent and/or negligent misrepresentations" and omissions, which were "made with the knowledge of and/or at the direction of Vasta, as the former Principal of Carlton [Mgmt.]," *id.* ¶ 28, caused plaintiff to invest "$10,000 in silver in March 2007, and continue[] to invest in silver and other commodities with . . . Carlton [Mgmt.]," *id.* ¶ 29.

Brassert is no longer employed by Carlton Mgmt., but the complaint does not allege when his service was terminated. *Id.* ¶ 30. Around this time, Michael Comiskey, a commodities trader employed by Carlton Mgmt., made further material misrepresentations to "induce Plaintiff to invest additional funds in precious metals." *Id.* ¶ 31. Comiskey used the "'sales pitch' that silver was a safe investment," safer than the stock market, *id.* ¶¶ 32-33, and that plaintiff would "'never have an equity call,'" *id.* ¶ 32. Moreover, he advised that plaintiff's "leverage would 'never exceed two and a half times invested capital.'" *Id.* ¶ 33. In essence, plaintiff alleges Comiskey "compounded the risk" of the investment "by recommending the use of credit to

purchase silver (which is inherently volatile)." *Id.*   Comiskey further failed to disclose the increased risk plaintiff "was subjected to by using credit" and "knowingly misrepresented that" purchasing "on credit would never result in a loss of money, in addition to the Plaintiff's initial investment." *Id.*  Relying on Comiskey's fraudulent misrepresentations, which Comiskey made "in the course and scope of his duties while employed at Carlton [Mgmt.]," plaintiff "continued to heavily invest in silver" during Comiskey's employment at Carlton Mgmt. *Id.* ¶ 34.

During March and April 2007, plaintiff invested $250,000 in silver with Carlton Mgmt., and paid $123,500 of that amount in commission fees, which he alleges Brassert, Comiskey and Vasta did not disclose to him prior to his investment with the company. *Id.* at ¶ 35.  Plaintiff asserts that these commission fees, which are 49.4% of his $250,000 investment demonstrate that the defendants traded excessively, "[c]hurning" his account, "in order to generate income for the broker[s] and the firm." *Id.*  The complaint fails to allege (1) how these commissions were billed, (2) how they were paid, and (3) what, if anything, was the stated reason for them (*e.g.*, whether they related to specific investments).

Around December 2007, Carlton Mgmt. ceased doing business, *id.* ¶ 37, and plaintiff's account was closed with only $75,000 of his original $250,000 investment remaining. *Id.* ¶ 38. Vasta, as the company's principal, created Lloyd's, "another company designed as a boiler room." *Id.* ¶ 37.[1]  Also around this time, Comiskey moved to Lloyd's, employed as a commodities broker. *Id.* ¶ 36.  To retain plaintiff as a client, Comiskey, acting within the course and scope of his employment with Lloyd's, advised plaintiff that (1) Lloyd's would not charge

---

[1] Lloyd's asserts that plaintiff has failed to present "any evidence that Mr. Vasta was the individual who created or formed Lloyd's, or that Mr. Vasta has ever been an employee of Lloyd's."  Lloyd's Opp. Br. 3.  Moreover, Lloyd's cites the Florida Department of State website, which shows that "Vasta has never been an officer or registered agent of Lloyd's."  *Id.* n.2.  The plaintiff is not required to produce any evidence at the pleading stage, and I must accept the non-moving party's allegations as true on a motion to dismiss. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

any commissions until he owned 83,000 ounces of physical silver, and (2) trading in his account would occur only with his "express consent and authorization." *Id.* ¶ 39. The complaint fails to specify, if and when, plaintiff's account at Lloyd's acquired 83,000 ounces of silver. At some point, although it is not clear exactly when,[2] Comiskey notified the plaintiff that Giovanni Loaiza, another commodities broker employed by Lloyd's, would handle his account. *Id.* ¶¶ 41-42.

Plaintiff alleges that Comiskey and Loaiza made several misrepresentations. First, contrary to Comiskey's representation, trading occurred in plaintiff's account at Lloyd's without his "express consent and authorization." *Id.* ¶ 40. Indeed, Lloyd's, through its commodities brokers Comiskey and Loaiza, who were acting on the company's behalf within the course and scope of their duties, "conducted many trades in Plaintiff's account without his consent or authorization, including purchases of platinum." *Id.* Several paragraphs later, however, the complaint alleges that plaintiff had authorized at least some of Loaiza's trades in his account. *See id.* ¶ 48 ("Loaiza, acting in the course and scope of his employment . . ., purchased in excess of the amounts Plaintiff authorized him to purchase in commodities and continued to leverage Plaintiff's investment without authorization."). The complaint does not provide any further details on which trades plaintiff had authorized and which were unauthorized.

Loaiza had also represented that "he was licensed to trade any and all securities and that with his investments in silver, plaintiff would 'never have an equity call.'" *Id.* ¶ 42. Loaiza, on behalf of Lloyd's, further represented to plaintiff that silver is a "suitable," "safe" investment, which is "safer than the stock market." *Id.* ¶ 43. Moreover, plaintiff "would double his investment before the end of 2008 and that he should diversify his investments by purchasing

---

[2] The complaint frames the time period as "[s]ubsequent to the unauthorized trades set forth in paragraphs 35 and 36," however, the referenced paragraphs discuss the commission fees plaintiff paid to Carlton Mgmt., and Comiskey's move to Lloyd's.

gold." *Id.*  Plaintiff alleges that "Loaiza and [Lloyd's] knew and/or should have known that these representations were false when made and were made for the purpose of inducing Plaintiff, an unsophisticated investor in the commodities industry, to rely upon these statements . . . to his detriment." *Id.* ¶ 44.

Relying on these representations, on March 4, 2008, plaintiff invested $300,000 in physical silver, with Lloyd's through Loaiza, and purchased an unspecified amount of physical gold. *Id.* ¶ 45.  The complaint alleges that although Loaiza had told plaintiff "he would not pay [commissions] if he became a client of [Lloyd's]," plaintiff paid commissions on both the invested and leverage funds. *Id.* ¶ 46.  Plaintiff was never informed of commissions prior to investing his capital with Loaiza and Lloyd's. *Id.*  Again, this allegation contradicts (1) the earlier allegation that Comiskey told plaintiff he would be charged fees after he owned 83,000 ounces of silver, *id.* ¶ 39, and (2) the Customer Account Documentation and Risk Factors ("Account Agreement") the plaintiff executed on January 2, 2008 when he became a Lloyd's customer,[3] which explicitly discloses that a management fee of fifteen percent would be charged for the services provided, Primps Dec. Ex. A, at 3.  It is also inconsistent with regard to who told the plaintiff he would not pay commissions and when this statement was made to him.  The complaint alleges that Loaiza became plaintiff's commodities broker at Lloyd's sometime after Comiskey had induced plaintiff to invest with Lloyd's. *See id.* ¶¶ 39, 41; *cf. id.* ¶ 46 and *id.* ¶ 39 (alleging Comiskey had informed plaintiff he would not be charged commissions until he owned 83,000 ounces of silver).

---

[3] Although the Account Agreement is not attached as an exhibit to the complaint, I may consider it because the "complaint is deemed to include any . . . statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citation omitted); *see* Second Am. Compl. ¶ 78 ("Defendants made these misrepresentations and/or omissions prior to, and independent of Plaintiff signing the account forms with Carlton [Mgmt.] and [Lloyd's]").  Moreover, although the Complaint does not allege the specific terms of the Account Agreement, the plaintiff has knowledge of the Account Agreement, relied on it in bringing this lawsuit and in his opposition briefs to the motions to dismiss. *Chambers*, 282 F.3d at 153.

On June 27, 2008, after being assaulted, plaintiff went into a coma and was hospitalized. *Id.* ¶ 50.  The plaintiff alleges that, during his hospitalization and coma, Loaiza conducted a series of unidentified unauthorized trades in his account.  *Id.* ¶ 51.  As I noted in my February 2011 Order dismissing the original complaint, plaintiff fails to allege what account was affected by the allegedly unauthorized trading and whether Lloyd's had any responsibility for that account.  On July 30, 2008, plaintiff's account with Lloyd's "was abruptly closed without" his permission, and plaintiff "was issued a check in the amount of $77,587.16 – a sharp decrease from the $300,000 investment Plaintiff made through Loaiza and [Lloyd's]."  *Id.* ¶ 52.  The complaint does not allege that the loss in value was due to Loaiza's unauthorized trading, some form of fraud, additional commissions, fees, or interest, or a decline in the silver or gold markets.

Even after Loaiza's unauthorized trading and the abrupt and unauthorized closure of his account with Lloyd's, plaintiff subsequently invested another $67,000 with Loaiza because Loaiza told him "that he would recover his monies lost while a client at [Lloyd's]."  *Id.* ¶ 53.  The account opened for that investment was apparently also closed by Loaiza sometime later. *Id.* ¶ 55.  The complaint does not clearly set forth the events that followed.  Apparently Loaiza opened yet another account for plaintiff, under "a new investment firm with the name Liberty B[u]llion International."  *Id.*  Loaiza introduced the plaintiff to Victor Morgan (whose role and business affiliation are left unspecified in the complaint) and represented Morgan would help recover plaintiff's money. *Id.* ¶ 54.  Loaiza and Morgan "became inaccessible" after some investment was made with funds in plaintiff's account.  *Id.* ¶¶ 53, 56.  At some unspecified time, plaintiff withdrew approximately $19,000 of his $67,000 investment from his account with Liberty Bullion.  *Id.* ¶ 58.  The complaint does not allege whether the plaintiff could have withdrawn the entire account balance at that time.  Loaiza, who is alleged to still be employed by

Lloyd's as a commodities broker, is alleged to control the remaining $48,000 of plaintiff's original investment with Liberty Bullion. *Id.* ¶ 59. This lawsuit followed.

## DISCUSSION

### A. Standard of Review

In considering the motions to dismiss, I must accept "all well-pleaded allegations in the complaint as true," and draw "all reasonable inferences in the plaintiff's favor." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). I may also consider "documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat" the motions to dismiss. *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). Although the plausibility standard is not akin to a "probability requirement," it requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* Thus, where the facts alleged "are merely consistent with a defendant's liability, [the complaint] stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient

to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

### B.  Rule 9(b)

When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted).

Rule 9(b)'s heightened pleading standard applicable to fraud claims applies to plaintiff's claims under (1) Count Three (Breach of Fiduciary Duty), Count Five (Conversion), and Count Six (Unjust Enrichment), *see Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) ("[B]reach of fiduciary duty, conversion, and unjust enrichment must be pled with specificity when the underlying acts are allegedly fraudulent."), (2) Count Four (Common Law Fraud), *see Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 110 (E.D.N.Y. 2009) ("Rule 9(b) applies to all common law fraud claims, including claims under state law."), and (3) Count Two (Violation of Florida's Securities and Investor Protection Act ("SIPA"), Chapter 517), *see Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011) (holding that plaintiff must satisfy Rule 9(b)'s heightened pleading requirement to state a claim upon which relief can be granted under SIPA § 301).

### C.  Choice of Law

Lloyd's argues that, under the Account Agreement's choice of law provision, Counts Two through Six of the complaint are governed by the substantive law of the State of Florida. Primps Dec. Ex. A, at 4.  Specifically, the Account Agreement provides that the "Account and the activities contemplated hereunder shall be governed by the substantive and procedural laws of Palm Beach County, the State of Florida without respect to Florida conflict of law rules. . . ." Primps Dec. Ex. A, at 4.  Plaintiff maintains, however, that Lloyd's waived its right to enforce the choice of law provision because it relied on and cited only New York law on its motion to dismiss the original complaint.  Plaintiff does not cite any case for this proposition.  And, I see no reason of policy to hold that Lloyds is precluded from raising the choice-of-law clause in support of its motion to dismiss the Amended Complaint.  On the contrary, because plaintiff relies almost entirely on Florida case law, it is he who has waived any claim to reliance on New York law, to the extent there is a conflict between New York and Florida law on the alleged claims. *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (noting that the parties had "based their briefs and arguments in  . . . the district court . . . on New York law," and therefore, the court would "acquiesce in the parties' expectation and . . . apply New York law").  Moreover, the only cause of action that would appear to be affected or precluded by the choice-of-law clause mandating the application of Florida law is plaintiff's claim under New York's General Business Law § 349, for which to the extent here relevant, there is a Florida counterpart on which the plaintiff basis one of his causes of action.  *See* Fla. Stat. § 517.301. Consequently, that cause of action is dismissed.

### D.  Respondeat Superior

Under Florida law, "an employer is vicariously liable for the torts of his employee (acting within the scope of his employment) under the doctrine of respondeat superior, but . . . an employer is not liable for torts caused by one considered the employer's independent contractor." *Georgia-Pacific Corp. v. Edmond Charles*, 479 So.2d 140, 142 (Fla. Dist. Ct. App. 1985). Lloyd's argues that it is not liable for the alleged misrepresentations of Comiskey and Loaiza because they are independent contractors, a fact which plaintiff expressly acknowledged in signing the Account Agreement.  Nevertheless, as the plaintiff correctly contends, "a statement in an agreement between parties that one is an independent contractor," as is contained in the Account Agreement here, "is not dispositive of that issue."  *Singer v. Star*, 510 So.2d 637, 639 (Fla. Dist. Ct. App. 1987) (citing *Nazworth v. Swire Fla., Inc.,* 486 So.2d 637 (Fla. Dist. Ct. App. 1986)).

"A jury may infer the existence of an agency even when both the principal and the agent deny it."  *Id.*; *see also Del Pilar v. DHL Global Customer Solutions (USA), Inc.*, 993 So.2d 142, 145-46 (Fla. Dist. Ct. App. 2008) ("Whether one laboring on behalf of another is a mere agent or an independent contractor is a question of fact . . . not controlled by descriptive labels employed by the parties themselves.") (internal quotation marks omitted) (omission in original).  Under the rule adopted by the Florida courts, whether an agent is an independent contractor is determined by the degree of control the employer exercises over the agent, considering the factors enumerated in Section 220(2) of the Restatement (Second) of Agency.  *Singer*, 510 So.2d at 639. Because of the allegations in the complaint that Lloyd's employed Comiskey and Loaiza as commodities brokers, *see* Second Am. Compl. ¶¶ 36, 41-42, the Account Agreement does not

establish as a matter of law that Comiskey and Loaiza were not indeed employees, as determined by the parties' actual practice.  *See Del Pilar*, 993 So.2d at 146.

Lloyd's argues, however, that the complaint fails to plead sufficient facts showing that Comiskey and Loaiza were acting within the scope of their employment when they committed the alleged malfeasance.  "Under Florida law, an action falls within the scope of employment if the conduct: (1) is of the kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009).  Lloyd's asserts that the complaint fails to allege (1) facts concerning the operations at Lloyd's, and Comiskey's and Loaiza's employment at Lloyd's, including their responsibilities and functions as commodities traders, and (2) that Comiskey and Loaiza acted with the purpose of benefiting the interest of Lloyd's.  Nevertheless, if the plaintiff's account was charged excessive and inappropriate fees and commissions as a result of Loaiza's and Comiskey's actions, then presumably Lloyd's received some benefit from those charges.  Second, at the pleading stage the plaintiff "could not possibly have had access to the inside . . . information necessary to prove conclusively-or even plead with greater specificity-the factual basis for holding [Lloyd's] liable for [Loaiza's and Comiskey's] conduct. That is why we have discovery. At the pleading stage, we assess only whether [the plaintiff]'s allegations are enough to raise a right to relief above the speculative level."  *Mazer*, 556 F.3d at 1272-73 (internal quotation marks omitted).  On the assumption that the complaint otherwise states a cognizable cause of action, there is sufficient factual matter alleged in the Second Amended Complaint to survive a motion to dismiss on the issue of vicarious liability.

**E.  Florida's Securities & Investor Protection Act, Chapter 517**

Under the Florida Securities Investor Protection Act ("SIPA"), it is unlawful for a person,

> [i]n connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, . . .
>
> > 1. [t]o employ any device, scheme, or artifice to defraud;
> > 2. [t]o obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
> > 3. [t]o engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

Fla. Stat. § 517.301(1)(a).  To establish his claim under § 517.301, the "plaintiff must establish the following: (1) a misrepresentation or omission of a material fact; (2) justifiably relied on; (3) that the misrepresentation or omission was made in connection with a purchase or sale of securities [or any investment]; (4) with scienter or reckless disregard as to the truth of the communications; and (5) that the untruth was the direct proximate cause of the loss." *Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 380-81 (S.D. Fla. 1999); *see also Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011).  Scienter can be established by "a showing of mere negligence." *Profilet*, 231 B.R. at 380-81.  Additionally, as previously noted, plaintiff must also satisfy the pleading requirements of Rule 9(b) in order to state a claim upon which relief can be granted. *See Arnold*, 839 F. Supp. 2d at 1286 (citing Fed. R. Civ. P. 9(b)).

Plaintiff alleges that "prior to, and independent of" his signing the Account Agreement with Lloyd's or account forms with Carlton Mgmt., the defendants misrepresented the following material facts:

(1)        "Carlton [Mgmt.] and [Lloyd's] were reputable companies;"
(2)        "Silver is safer than the stock market;"

(3)          "The investment in silver is safe;"
(4)          "The investment in silver is a suitable investment;"
(5)          "Plaintiff would double his investment before the end of 2008 and that he should diversify his investments by purchasing gold."

Second Am. Compl. ¶¶ 73, 78.  Moreover, they omitted to tell him that:

(6)          "The investments would subject [his] monies to a substantial risk of loss in value;"
(7)          "Vasta was not a successful business person;"
(8)          "Vasta had a prior judgment against him and, based on that judgment, had been barred from the futures industry; and"
(9)          "Commodities were never purchased on Plaintiff's behalf."

*Id.* ¶ 74.  In his brief, plaintiff additionally focuses on his allegations that Loaiza represented that only trades plaintiff authorized would be made in his account and that he would be charged commissions only after a certain level had been reached in his account.

The Account Agreement explicitly explains the risk of loss associated with investing in precious metals upfront in the first paragraph.  "As with any investment, the prices of precious metals change daily and there are absolutely no guarantees that purchase price will ever be exceeded in order to provide the opportunity of a higher selling price.  Upon entering the market, the risk of loss is the client's."  Primps Dec. Ex. A, at 3.  Because this unequivocal disclosure directly contradicts the alleged misrepresentations and omissions, no consumer would have reasonably believed that an investment in silver is "safe" and that he "would double his investment before the end of 2008."  Consequently, the plaintiff cannot justifiably rely on the asserted misrepresentations and omissions when he has not alleged that commodities were purchased on his behalf *prior* to his signing of the Account Agreement.  As the Eleventh Circuit has explained, a plaintiff cannot justifiably rely on oral representations that are disclaimed in a written document:

> "[T]he securities laws are designed to encourage the complete and careful written presentation of material information. A seller who fully discloses all material information in writing should be secure in the knowledge that it has done what the law requires. Just as in the law of contracts a written declaration informing one party of an important fact dominates a contrary oral declaration, so in the law of securities a written disclosure trumps an inconsistent oral statement. Otherwise even the most careful seller is at risk, for it is easy to claim: 'Despite what the written documents say, one of your agents told me something else.' If such a claim of oral inconsistency were enough, sellers' risk would be greatly enlarged. All buyers would have to pay a risk premium to cover this extra cost of doing business."

*First Union Discount Brokerage Servs., Inc. v. Milos*, 997 F.2d 835, 846 n.22 (11th Cir. 1993) (quoting *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1322 (7th Cir. 1988) (Easterbrook, J.)); *see also Marthame Sanders & Co. v. 400 W. Madison Corp.*, 401 So.2d 1145, 1146 (Fla. Dist. Ct. App. 1981) (holding that those who sign a contract "are charged with knowledge . . . of the provisions incorporated into the contract they executed").

Thus, there are insufficient factual allegations to draw an inference that defendants failed to tell the plaintiff that investment in silver would subject his "monies to a substantial loss in value." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . [requires] more than a sheer possibility that a defendant acted unlawfully."). Moreover, plaintiff has failed to sufficiently allege which trades in his account, in particular, were unauthorized and which commissions were charged prior to his owning 83,000 ounces of silver. The failure to allege with particularity the details of the circumstances surrounding these alleged misrepresentations and omissions is insufficient to satisfy Rule 9(b)'s pleading requirements.

As for the allegations of omissions regarding Vasta, the plaintiff has not alleged how these omissions -- Vasta's lack of success in business, the prior judgment against him, and his bar from the futures industry -- were a "direct proximate cause of the loss" he suffered. A direct

and proximate cause is defined as "that which sets in motion a train of events bringing about a result without the intervention of any force operating or working actively from a new and independent source." 12A Words and Phrases 84 (West Publishing Co. 1954). Plaintiff has not alleged how each of his alleged omissions was the source that set "in motion a train of events" that caused his losses. He has not tied any alleged loss of money specifically to his lack of knowledge of Vasta's lack of success in business, the prior judgment against Vasta, or that Vasta was barred from the futures industry. Indeed, the trades at issue here involved commodities, not futures. Thus, these alleged omissions also fail to state a claim under Fla. Stat. § 517.301.

Finally, plaintiff cannot state a claim under § 517.301 for the last alleged omission -- "Commodities were never purchased on Plaintiff's behalf." First, this allegation contradicts other alleged facts -- namely, that Comiskey and Loaiza "conducted many trades in Plaintiff's account . . ., including purchases of platinum." Second Am. Compl. ¶ 40. Second, assuming this allegation is true would defeat plaintiff's § 517.301 claim because if no commodities were purchased on plaintiff's behalf, there would be no "purchase or sale of" an investment, a necessary element of a § 517.301 claim. *See Profilet*, 231 B.R. at 380-81. The defendants' motions to dismiss are granted as to the claim under SIPA § 517.301.

**F. Fraudulent Inducement.**

"To state a cause of action for fraud in the inducement, the Plaintiff must allege (a) a misrepresentation of a material fact; (b) that the representor of the misrepresentation knew or should have known of the statement's falsity; (c) that the representor intended that the representation would induce another to rely and act on it; and (d) that the plaintiff suffered injury in justifiable reliance on the representation." *Eagletech Comm'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So.3d 855, 861 (Fla. Dist. Ct. App. 2012) (quotation marks omitted). As with his cause

16

of action under Florida's statutory fraud statue, SIPA § 517.301, plaintiff "must plead that he *reasonably* relied upon the misrepresentation or omission" to succeed on his claim of common law fraud in Florida. *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 371 (S.D. Fla. 1991) (emphasis added).

"[A] party may not recover in fraud for an alleged false statement when proper disclosure of the truth is subsequently revealed in a written agreement between the parties." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 542-43 (Fla. Dist. Ct. App. 2003); *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So.2d 924, 928 (Fla. Dist. Ct. App. 2002). "In that case it is the language in the contract itself that induces the agreement." *Output, Inc. v. Danka Bus. Sys., Inc.*, 991 So.2d 941, 943 (Fla. Dist. Ct. App. 2008) ("Plaintiff cannot recover for fraud for an alleged oral misrepresentation that is adequately covered in the contract . . . because one cannot fraudulently induce another to enter a contract with representations that are already contained in the contract."). Nor can vague and general statements of optimism, which are "understood by reasonable investors" as "no more than puffery" form the basis for a fraudulent inducement claim. *Gulati v. Countrywide Home Loans, Inc.*, 2006 WL 6301285, at *2 (M.D. Fla. July 10, 2006); *see also Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So.2d 168, 172 (Fla. Dist. Ct. App. 1994) ("Participants in a normal business transaction are not entitled to rely upon such 'ephemeral matters' as opinions, judgments or legal views expressed by an opposing party"). Nevertheless, if the representation is made by "one with superior knowledge of the subject of the statement, such statement may constitute a statement of fact rather than opinion, as it might be considered if the deal had been negotiated by parties on equal terms." *Thor Bear*, 648 So.2d at 172.

This exception to the general rule, however, would not apply here.   In *Gulati v. Countrywide Home Loans, Inc.*, a case with a strikingly similar fact pattern, the plaintiffs brought a fraud claim against the president of a condominium and two mortgage agents in the deal.   In that case, the mortgage agents had "'confirmed that [the condominium unit] was a 'good investment,'" and that they "had each purchased similar units themselves."   *Gulati*, 2006 WL 6301285, at *1.   Moreover, plaintiffs had been assured that "'the projected rental income from [the unit] would be more than enough to cover the . . . mortgage payments after three months so that [Plaintiffs] need not worry about making any mortgage payments.'"   *Id* (quoting complaint). As a result of these representations, the plaintiffs alleged that they "believed that their purchase of the condominium unit . . . constituted a risk-free investment."   *Id.* at *2.   The judge dismissed the plaintiffs' fraud claim, however, holding that their "belief, at least insofar as it was informed by the statements of [the mortgage agents], was not reasonable.   Plaintiffs could have made some minimal effort to ascertain the basis for [the mortgage agents]'s projections, but chose instead to take them on their word. Such reliance was neither reasonable nor justified."   *Id.*

Similarly, in this case, plaintiff's reliance on many of the alleged misrepresentations and omissions was not reasonable.   *See* Second Am. Compl. ¶¶ 91(a), 95(d)-(f) & (h) (alleging the defendants omitted to tell plaintiff that investment in silver "would subject [his] monies to a substantial risk of loss in value," and misrepresenting to him that "[s]ilver is safer than the stock market," "investment in silver is safe," "the investments were safe and profitable and had guaranteed returns," and "investment in silver is a suitable investment").   Nevertheless, the risks associated with the investment were also disclosed to the plaintiff in the Account Agreement he signed with Lloyd's.   Moreover, the allegation that plaintiff was told he "would not be paying any commissions" to Lloyd's, *id.* ¶ 95(g), is contradicted both by the complaint, *see id.* ¶ 39, and

the Account Agreement.  Thus, none of these omissions and misrepresentations can form the basis of a fraud claim.

Plaintiff also alleges that defendants misrepresented that they "were purchasing and storing the commodities on [his] behalf," *id.* ¶ 95(c), and omitted to tell him that "[c]ommodities were never purchased on [his] behalf," *id.* ¶ 91(d).  These statements contradict other allegations in the complaint of unauthorized trading in plaintiff's account, including purchases of platinum, *id.* ¶ 40.  Thus, the complaint fails to adequately allege what was transpiring in plaintiff's account at Lloyd's or Liberty Bullion -- whether commodities were indeed purchased, what fees were charged, and for what transactions.  Although fraud allegations should be resolved after discovery, either on a motion for summary judgment or trial, *see Tres-AAA-Exxon v. City First Mortg., Inc.*, 870 So.2d 905, 907 (Fla. Dist. Ct. App. 2004) ("Allegations of fraud are difficult to resolve by a judgment on the pleadings since, generally, such a claim requires an explanation of the allegations."), the allegations here are insufficient to satisfy Rule 9(b)'s particularity requirements.

Finally, plaintiff alleges that defendants omitted to tell him "Vasta had a prior judgment against him and, based on that judgment, had been barred from the futures industry," *id.* ¶ 91(c), and misrepresented that "Defendants were licensed to sell the investments" and "Carlton [Mgmt.] was registered to purchase the investments," *id.* ¶ 95(a)-(b).  These misrepresentations and omissions cannot be dismissed as a matter of law because drawing all reasonable inferences in the plaintiff's favor, these were material facts that would have influenced plaintiff's decision to invest in precious metals with the defendants.  Nevertheless, it appears from the complaint that

these allegations would only apply to Carlton Mgmt. and Vasta, who is the only person alleged to not be registered to sell commodities.[4]

Plaintiff has not served either Carlton Mgmt. or Vasta.  Indeed, the complaint alleges that Carlton Mgmt. ceased doing business in December 2007, and so it appears that it may no longer exist as an entity.  Nevertheless, because the plaintiff has failed to serve these defendants within 120 days after filing the complaint, I am providing him notice that I intend to dismiss the action against Carlton Mgmt. and Vasta unless within fourteen within the date of this order he can show good cause for his failure to serve them.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

### G.  Breach of Fiduciary Duty

The plaintiff alleges that a fiduciary relationship existed between him and the defendants because he placed "his full faith and trust in" them "to handle his accounts and to purchase precious metal and/or implement appropriate investment strategies."  Second Am. Compl. ¶ 84. Because the defendants had "superior knowledge and skill with respect to investment allocations, commodities and suitability," they owed plaintiff "a fiduciary duty not to abuse that superior knowledge and skill."  *Id.* ¶ 85.

Because the parties did not have an express agreement establishing a fiduciary relationship here, whether such a relationship exists will depend "upon the specific facts and circumstances surrounding" the parties' relationship and the transactions involved.  *Taylor Woodrow Homes Fla.*, 850 So.2d at 540.  "To establish a fiduciary relationship, a party must

---

[4] The complaint fails to allege that Comiskey and Loaiza are not licensed to sell the investments plaintiff purchased through them.

allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Id.* (internal quotation marks omitted).  A confidential relationship is not established, however, simply by one party placing trust or confidence in the other. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005).  There must be "some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.*

Under Florida law, the fiduciary duty of care and loyalty a broker owes an investor depends on the nature of the investment account. *See First Union Brokerage v. Milos*, 717 F. Supp. 1519, 1526-27 (S.D. Fla. 1989) (in the context of securities).  In a nondiscretionary account, where the customer and broker confer as to a particular transaction but the broker has no continuing management duty over the account once the single transaction is complete, the broker owes the following fiduciary duties to an investor:

> (1) to recommend investments "only after studying it sufficiently to become informed as to its nature, price, and financial prognosis;"
> (2) "to perform the customer's orders promptly in a manner best suited to serve the customer's interests;"
> (3) "to inform the customer of the risks involved in purchasing or selling a particular security;"
> (4) "to refrain from self-dealing;"
> (5) "not to misrepresent any material fact to the transaction; and
> (6) "to transact business only after receiving approval from the customer."

*Id.* at 1526 & n.21.  Where the broker's tasks are merely "ministerial . . ., basically executing buy and sell orders as instructed by the investor," however, there is no fiduciary relationship. *In re Caples*, 454 B.R. 191, 201 (Bankr. N.D. Ala. 2011).

Based on the allegations in the complaint and the Account Agreement, the plaintiff's account is a non-discretionary account, and the plaintiff alone -- under the terms of the Account

Agreement -- was "responsible for all decisions based on representations or recommendations made by the broker[s] of the company."  Primps Dec., Ex. A, at 4.  Because Florida law requires that there be "some degree of undertaking on the other side to advise, counsel, and protect the weaker party," it does not appear that a fiduciary relationship was ever established here, at least with respect to Lloyd's.

There may, however, have been an implied fiduciary relationship between Loaiza and the plaintiff.  The allegations in the complaint seem to suggest that Loaiza performed more than mere ministerial tasks, and indeed, provided the plaintiff with specific investment advice, including to diversify his investments by purchasing gold.  He also told the plaintiff that he would "double his investment before the end of 2008."  Second Am. Compl. ¶ 43.  "Because of the factually intensive nature of an implied fiduciary duty inquiry," this question may be better resolved on a summary judgment motion or trial, rather than on a motion to dismiss.  *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So.2d 204, 208 (Fla. Dist. Ct. App. 2003).

Nevertheless, assuming a fiduciary relationship existed, by virtue of the parties' interactions, the complaint fails to allege sufficient facts of a breach of that duty.  The plaintiff alleges that the defendants breached their duties by (1) "[i]ntentionally misleading" him regarding the activity and value in his account; (2) concealing the unauthorized trading that occurred in his account and failing to disclose all fees associated with trading; and (3) giving him "a false sense of security" about his investments because Loaiza represented that he would recoup plaintiff's losses.  Second Am. Compl. ¶ 87.  None of these allegations satisfy Rule 9(b)'s particularity requirements because there is no specific allegations as to what unauthorized trading occurred, which trades were unauthorized trades, which fees were charged that were inappropriate, and how the plaintiff was misled about the activity and the value of his account.

Moreover, because the plaintiff was not totally novice to investment in precious metals, and had suffered heavy losses in the prior year with such investments with Carlton Mgmt., it is not clear that Loaiza's comments could give him "a false sense of security," as he alleges.  Indeed, the risks associated with investments in the precious metals and the potential for making profits were clearly disclosed in the Account Agreement.  Thus, he has failed to allege sufficiently a breach of any fiduciary duty and this claim is dismissed.

### H.  Conversion

To state a claim for conversion under Florida law, the plaintiff must allege three elements: "(1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein."  *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001).  Plaintiff asserts this claim only against Loaiza and Lloyd's, but in his opposition briefs, states that his conversion claim is premised on the unauthorized trades allegedly made while he was in a coma, and the failure to return the remaining funds in his Liberty Bullion account when he demanded it in August 2008 upon his release from the hospital.  This claim must be dismissed because it fails to meet the particularity requirements of Rule 9(b) on both premises.  First, there are no specific allegations as to the unauthorized trades that occurred in plaintiff's account, including the dates on which they occurred.  Second, there is no explanation as to the reason that plaintiff was able to withdraw $19,000 from his account after demanding return of his money, but was not able to withdraw the remaining $48,000.

### I.  Unjust Enrichment

Plaintiff also asserts a catch-all unjust enrichment claim premised on the benefit defendants received from "a series of unauthorized trades" and commissions that had not been

disclosed to the plaintiff.  Second Am. Compl. ¶ 109.  "The elements of a cause of action for unjust enrichment are: (1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it."  *Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So.3d 755, 758 (Fla. Dist. Ct. App. 2011).  The purpose of an unjust enrichment claim is "to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity."  *Golden v. Woodward*, 15 So.3d 664, 670 (Fla. Dist. Ct. App. 2009) (internal quotation marks omitted).  This claim must also be dismissed for failure to satisfy Rule 9(b)'s particularity requirements.  To survive a motion to dismiss, plaintiff must allege some specifics as to the dates on which the unauthorized trades occurred and what fees were charged that were inappropriate.  Plaintiff argues that it would be premature to dismiss this claim because the trading records confirming all trades made, including ones that occurred while plaintiff was in a coma, are in Lloyd's possession.  This argument is meritless, however, because this is a nondiscretionary account, and plaintiff must have had access to a list of trades that occurred in his account, or at the very least, the commission fees charged to his account, the dates and reasons for each charge.

**CONCLUSION**

The motions to dismiss the complaint are granted.  If, within fourteen days of the date of this order, plaintiff does not provide good cause for his failure to serve defendants Carlton Mgmt. and Vasta, the action against them will also be dismissed without prejudice.

**SO ORDERED.**

Brooklyn, New York
September 20, 2012

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge